UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JERRY MITCHELL, IREAN MITCHELL, )<br>Individually and as Next Friends of Mq.R., )<br>M.R.,Jr., and Mk.R., )<br>)<br>    Plaintiff, )<br>)<br>vs. )<br>)<br>MARCUS TYRONE ROBINSON, Sr., )<br>et al. )<br>)<br>    Defendants. ) | Case No. 1-11cv130 SNLJ |

## MEMORANDUM AND ORDER

Plaintiffs Jerry Mitchell and Irean Mitchell are the grandparents and Next Friends of minor plaintiffs Mq.R., M.R., Jr., and Mk.R.  They have brought this lawsuit against the father of the minor children, defendant Marcus Robinson, for the wrongful death of their mother.  Plaintiffs allege in Count I, Wrongful Death, that defendant Robinson shot and killed his wife — the mother of his children — and they seek money damages.

Plaintiffs have also named as defendants Unilever United States, Inc. ("Unilever"), Metropolitan Life Insurance Company ("Met Life"), and John Doe.  Plaintiffs allege that the decedent was employed by Unilever and/or by certain other unknown persons or firms designated here as "John Doe."  Plaintiffs further allege that decedent was eligible for $121,000 in life insurance benefits through a policy or policies issued by defendant Met Life and/or John Doe, and that the policy or policies were administered by defendants Unilever, Met Life, and/or John Doe.  Plaintiffs claim that defendants failed to properly investigate the circumstances of the

decedent's death which resulted in their wrongfully paying $121,000 in death benefits to defendant Robinson.  Plaintiffs allege that defendant Robinson was ineligible for receipt of those death benefits due to his involvement in his wife's death pursuant to Missouri's "slayer law."  Plaintiffs' Count II is purportedly a state law claim for "Negligent Payment of Life Insurance Benefits," Count III is purportedly a state law claim for "Breach of Contract," and Count IV is a federal law claim for "Breach of Fiduciary Duty under ERISA," the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001 et seq.

     Plaintiffs' original complaint included only two Counts — the wrongful death count against defendant Robinson, and the "Negligent Payment of Life Insurance Benefits" against the other defendants.  Then, defendant Unilever filed its Motion to Strike Jury Demand with Respect to Count II on July 26, 2011 (#7).  Plaintiffs filed the amended complaint in response to that Motion in order to separate their state-law claims from their ERISA claim.  Defendant Unilever contends that the insurance benefits to which plaintiffs claim entitlement are benefits provided pursuant to the UNI*Care* Benefits of Choice Program (the "Plan"), which is an employee welfare benefit plan sponsored by Unilever and governed by ERISA.  Unilever submits that Count II of the original complaint and Counts II and III of the amended complaint all arise out of the administration of Plan benefits.  As a result, Unilever contends, any and all state law claims asserted by plaintiff against Unilever are entirely pre-empted by ERISA.  *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52-57 (1987); *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209 (2004).  *See also Fink v. Dakotacare*, 324 F.3d 685, 689 (8th Cir. 2003) ("state law causes of action are completely preempted by ERISA when they 'arise from the administration of benefits'") (quoting *Kuhl v. Lincoln Nat. Health Plan*, 999 F.2d 298, 302-304 (8th Cir. 1993)).

I.  **Legal Standard**

Federal Rule of Civil Procedure 39(a)(2) provides that the Court may, upon motion or upon its own initiative, docket the trial as a non-jury action where the Court finds that a right of trial by jury does not exist under the Constitution or statutes of the United States.  As the Eighth Circuit has held repeatedly, there is no right to a jury trial in an action under ERISA. *See Houghton v. SIPCO, Inc.*, 38 F.3d 953, 957 (8th Cir. 1994) (holding that "there is no right to … a jury trial under ERISA" and reversing judgment because the court submitted ERISA-governed claims to a jury); *Langlie v. Onan Corp.*, 192 F.3d 1137, 1141 (8th Cir. 1999) (citing *Houghton* and holding that "there is no right to a jury trial under ERISA"); *Kirk v. Provident Life and Accident Ins. Co.*, 942 F.2d 504, 506 (8th Cir. 1991) ("we also conclude that Kirk's Seventh Amendment argument is without merit"); *In Re Vorpahl*, 695 F.2d 318, 321-322 (8th Cir. 1982) (no right to jury trial in ERISA action). *See also Coots v. United Employers Federation*, 865 F. Supp. 596, 601 (E.D. Mo. 1994) ("Since this is an ERISA action, plaintiff is not entitled to a jury."); *Mathis v. American Group Life Ins. Co.*, 873 F. Supp. 1348, 1361 (E.D. Mo. 1994) (striking plaintiff's demand for a jury trial).

II. **Discussion**

Plaintiffs characterize their Counts II and III as arising under Missouri's "slayer law" — and not under ERISA.  "Missouri's 'slayer law' provides that if a named beneficiary of a life insurance policy is convicted of killing the insured, the beneficiary is therefore 'disabled' from taking the proceeds of the policy." *Wunsch v. Sun Life Assur. Co. of Canada*, 92 S.W.3d 146, 154 (Mo. App. 2002) (citing *Lee v. Aylward*, 790 S.W.2d 462, 462 (Mo. banc 1990)).  Missouri courts first applied the slayer law principle in *Perry v. Strawbridge*, 108 S.W. 641 (1908). There,

the court held that one who had murdered his wife did not succeed to her interests in real estate under the intestate succession laws. *Id.* at 645. Unilever argues that no Missouri court has ever recognized that the slayer law created a cause of action. This Court need not address that issue here, however, because it is clear that — even if Missouri's slayer law created a cause of action — ERISA preempts Missouri's law.

Ultimately, plaintiffs could have brought — and, in their amended complaint, did bring — an action under ERISA, § 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), which states that "[a] civil action may be brought...by a participant or beneficiary...to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." The Supreme Court has been very clear that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health, Inc. v Davila*, 542 U.S. 200, 209 (2004). That case specifically addresses § 502(a)(1)(B): "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no independent legal duty that is implicated by a Defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Id.* at 210.

Although neither party discusses it, the Supreme Court has also tangentially discussed state "slayer laws" and their relationship to ERISA. In *Egelhoff v. Egelhoff*, 532 U.S. 141 (2011), the Court determined that a state statute providing for automatic revocation, upon divorce, of any designation of a spouse as beneficiary of nonprobate asset was preempted by ERISA. That state statute, according to the Supreme Court noted

4

>runs counter to ERISA's commands that a plan shall 'specify the basis on which payments are made to and from the plan,' § 1102(b)(4), and that the fiduciary shall administer the plan 'in accordance with the documents and instruments governing the plan,' § 1104(a)(1)(D), making payments to a 'beneficiary' who is 'designated by a participant, or by the terms of [the] plan.' § 1002(8).

*Id.* at 147.  The state statute "also has a prohibited connection with ERISA plans because it interferes with nationally uniform plan administration," subjecting plan administrators to "different legal obligations in different States." *Id.* at 148.  After determining that such statutes were preempted by ERISA, the Supreme Court observed that state "slayer statutes" could also "revoke the beneficiary status of someone who murdered a plan participant." *Id.* at 152.  But the Court went on to say, in dicta, that the principle underlying slayer "statutes — which have been adopted by nearly every State — is well established in the law and has a long historical pedigree predating ERISA.  And because the statutes are more or less uniform nationwide, their interference with the aims of ERISA is at least debatable." *Id.* (internal citations omitted). Notably, the Supreme Court again raised but declined to address slayer statutes in the ERISA context in *Kennedy v. Plan Adm'r for Dupont Sav. and Inv. Plan*, 555 U.S. 285, 304 n.14 (2009).

Plaintiffs contend that Missouri's slayer law falls under the savings clause of 29 U.C.S. § 1144(b)(2)(A), which states that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance...."  In support of their argument, plaintiffs rely primarily on *Estate of Curtis v. Prudential Insurance Co.*, 839 F. Supp. 491 (E.D. Mich. 1993), which held that Michigan's "slayer statute" was not preempted by ERISA because it fell under the savings clause of 29 U.S.C. § 1144(b).

Critically, however, *Estate of Curtis* was decided before both (1) *Davila*, 542 U.S. at 209, which clarified that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy" is preempted, and (2) *Kentucky Association of Health Plans,*

5

*Inc. v. Miller*, 538 U.S. 329 (2003), in which the Supreme Court held that a state law, to be saved from preemption under §1144(b)(2)(A), must "be specifically directed toward entities engaged in insurance" and "must substantially affect the risk pooling arrangement between the insurer and the insured." 538 U.S. at 342. Here, it seems clear that plaintiffs' breach of contract and negligence claims duplicate ERISA's civil enforcement remedy. Moreover, Missouri's common law slayer doctrine cannot be saved under the terms of Section 1144(b)(2)(A) because, even if it could be said to be "directed toward entities engaged in insurance," which is doubtful, the doctrine does not "substantially affect the risk pooling arrangement between the insurer and the insured." *Miller*, 538 U.S. at 342.

  Finally, as Unilever argues, it is questionable whether Missouri's common law "slayer law" even creates a cause of action or imposes liability on the payor. The Eighth Circuit has not directly addressed whether a state slayer law is preempted by ERISA. Although neither party addresses this issue, the Court was able to find only one Eighth Circuit case addressing a slayer law in the context of ERISA: In *First National Bank & Trust Co. of Mountain Home v. Stonebridge Life Insurance Co.*, 619 F.3d 951 (8th Cir. 2010), the Eighth Circuit addressed a case similar to the matter at hand. There, the plaintiff was the estate of a wife who was murdered by her husband, and the husband had a life insurance policy on his wife through his employer. *Id.* at 953. Murder charges against the husband had been *nolle prossed*, so the estate sued both (1) the husband for wrongful death and (2) the insurance company to obtain payment of the insurance proceeds. *Id.* The insurance company had refused to pay out on the policy because it contended that only the husband had an interest in the policy. *Id.* A jury found in favor of the plaintiff on the wrongful death claim, and the district judge determined at a later hearing pursuant to 29 U.S.C. §1132(a)(1)(B) that the estate was entitled to the insurance proceeds. *Id.*

6

at 954; *First Nat'l Bank & Trust Co. of Mountain Home v. Stonebridge Life Ins. Co.*, No. 4:06-cv-898-BRW, Doc. 163 (E.D. Ark. June 4, 2009). The Eighth Court upheld, among other things, the district court's order that the estate was entitled to the insurance proceeds. 619 F.3d at 955. In that case, the insurance proceeds had not yet been paid, so the plaintiff did not have reason to make negligence or breach of contract claims against the insurance company, but it is clear that the district court's decision was informed by the state's slayer law.

Similar to *First National Bank*, the plaintiffs here seek a ruling that they — not the alleged slayer — are entitled to the deceased's insurance proceeds, and, as such, they (admittedly) are making a claim under ERISA § 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B). Therefore, this Court holds that, under *Davila* and *Miller*, plaintiffs' claims are limited to ERISA claims under 29 U.S.C. §1132(a)(1)(B) because claims for breach of contract or negligence are duplicative of the remedy already available under ERISA. As the *Davila* Court stated, "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no independent legal duty that is implicated by a Defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." 542 U.S. at 210.[1] Here, the plaintiffs could have brought — and in fact did bring — claims under ERISA § 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B). Thus, their state law claims are preempted, ERISA applies, and a jury is not available to plaintiffs for adjudication of those claims.

Finally, this Court's decision is not at odds with the *Egelhoff* dicta regarding slayer laws because, although this Court holds that plaintiffs' claims are governed by ERISA, this Court may

---

[1] With respect to the "no independent legal duty" aspect of the *Davila* preemption analysis, this Court notes that — as in *Davila* — no such "independent legal duty" is at issue here. As the *Davila* Court stated, the plaintiffs there "bring suit only to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA." 542 U.S. at 214. The same is true in this case.

still apply the principles of Missouri's slayer law in adjudicating plaintiffs' ERISA claim.  *See, e.g.*, *First National Bank & Trust Co. of Mountain Home*, 619 F.3d at 955; *Nale v. Ford Motor Co. UAW Retirement Plan*, 703 F. Supp. 2d 714 (E.D. Mich. 2010) (finding it unnecessary to determine whether state slayer statute was preempted because federal common law also "encompasses the equitable principle that a person should not benefit from his wrongs").

Accordingly,

**IT IS HEREBY ORDERED** that defendant Unilever's Motion to Strike Jury Demand with Respect to Count II on July 26, 2011 (#7) is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiffs' jury demands with respect to Counts II and III of plaintiffs' Second Amended Complaint are **STRICKEN**.

Dated this __22nd__ day of December, 2011.

_____
UNITED STATES DISTRICT JUDGE