# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| JERRY MITCHELL, IREAN MITCHELL, individually and as Next Friends of Mq. R., M. R., Jr., and Mk. R., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 1:11CV130 SNLJ ) |
| MARCUS TYRONE ROBINSON, SR., *et al.* | ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants Unilever United States, Inc. ("Unilever"), and Metropolitan Life Insurance Company's ("Met Life") motion for summary judgment. After an extended briefing schedule, the matter has been fully briefed and is now ripe for disposition.

**I.  Background**

Plaintiffs Jerry Mitchell and Irean Mitchell are the grandparents and Next Friends of minor plaintiffs Mq. R., M. R., Jr., and Mk. R., who allege a claim of wrongful death against defendant Marcus T. Robinson, Sr., for killing Shekiah Mitchell Robinson, and allege state law claims against defendants Unilever and Met Life for recovery of covered plan related benefits under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA").

The following facts are undisputed except where indicated. Plaintiffs' decedent was employed by Unilever. Decedent was eligible for $121,000 in life insurance benefits through three difference policies issued by defendant Met Life, and the policy or policies were administered by defendants Unilever and Met Life. She died as the result of multiple gunshot wounds to the head, chest, and arms on August 18, 2006 at her home. The decedent's husband, defendant Marcus Robinson, Sr., submitted a claim to MetLife for the decedent's death benefits on November 22, 2006. MetLife asked Robinson to submit a statement from the policy indicating whether or not Robinson was considered a suspect in the homicide and whether the decedent herself was considered an aggressor in the events leading up to her death. Robinson told MetLife to get in touch with the detectives, and, later, the county prosecutor. MetLife was unable to reach the detectives or the prosecutor. Then, on March 27, 2007, Robinson advised that he had hired an attorney and, on March 30, Robinson provided the name of a different prosecutor, Paul Boyd.

On March 30, MetLife called Mr. Boyd and was advised that he was "75% sure" that Robinson did not have involvement, but that the case had not yet been tried. He also advised that Robinson had passed a lie detector test but those tests are not 100% accurate nor admissible in court. Mr. Boyd requested that MetLife's file remain open.

On May 10, MetLife again called Mr. Boyd, who advised that Robinson had not been indicted on any charges concerning the homicide and that MetLife could process its file accordingly. On May 21, a MetLife senior claim examiner advised another MetLife claim examiner (1) that MetLife would need the police to put something in writing regarding Robinson's not being a suspect, and (2) that if police would not do that, MetLife

2

should follow certain procedures for situations like this one, where the beneficiary has not been ruled out as a suspect and only the beneficiary is making a claim. Because the death occurred less than 18 months before, the claim was to be put on a monthly call-up for a total of 18 months from the date of death such that MetLife would follow up with police monthly.

On May 23, MetLife again contacted Mr. Boyd and advised that it needed a statement for the file regarding Robinson's status. On August 3, MetLife wrote to Mr. Boyd and requested the same information again. On August 8, Robinson's attorney wrote to MetLife and advised that an individual named Robert Madison II had been charged with murder in the second degree (and other crimes) and that the trial was scheduled for September 5, 2007. MetLife obtained copies of the online docket entries from the ongoing criminal court case. On September 19, Robinson's attorney advised MetLife that Robinson had cooperated fully with the police, had taken a lie detector test and given depositional testimony, and that the trial of Robert Madison had been changed to February 13, 2008. The attorney demanded the benefits be paid to Robinson.

MetLife talked to a police captain on November 7, 2007. The captain stated the decedent was not the aggressor and that her husband shot her inadvertently while trying to shoot at the person breaking into the residence. The captain noted there was no prosecution of the husband and that, although the decedent's family thought it was a set-up to kill the decedent, the police had found no basis for that claim.

On November 29, 2007, MetLife paid Robinson $136,514.53, which was $50,000 in Basic Life Insurance Benefits, $22,500 in Optional Life Insurance Benefits, $48,500 in optional accidental death benefits, and interest of $15,514.53.

Notably, the decedent had not listed a beneficiary on her insurance forms. The applicable policies stated that where no beneficiary is listed, the benefits would be paid "to the first of the following who is alive at your death: your legal spouse; your children; your parents; your brothers and sisters; your estate." In addition, the policies state that such a beneficiary is disqualified if the beneficiary is responsible for the death. Plaintiffs here --- the decedent's parents and children --- claim they are entitled to the insurance proceeds because, as indicated above, they believed Robinson shot his wife intentionally and was thereby disqualified as a beneficiary. Defendants point out that prior to the filing of this lawsuit on June 9, 2011, none of the plaintiffs had submitted a claim for plan benefits by reason of the decedent's death, and none of the plaintiffs had contacted MetLife. Robinson, as decedent's husband, was the only person to file a claim for benefits.

Plaintiffs filed this lawsuit. Although their original complaint contained five counts, only Count V, for recovery of covered plan related benefits under ERISA, remains applicable to defendants MetLife and Unilever. The defendants have filed for summary judgment.

## II. Legal Standard

Pursuant to Rule 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v.*

*Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to the discussion.

## III. Discussion

As an initial matter, the Court notes that the movant's statement of facts are deemed admitted if not specifically controverted by the party opposing the motion. Local Rule 4.01 (E) provides:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon

5

> which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. ***All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party***.

(Emphasis added). Here, the plaintiffs dispute several of defendants' facts, but they fail to cite to the record in support of any of their disputed facts. Thus, the facts set forth by defendants are deemed admitted for the purposes of summary judgment. Regardless, the Court has reviewed the entire record to determine whether summary judgment is warranted.

The plan at issue here grants MetLife, as claim fiduciary, the discretionary authority to interpret the terms of the plan and to determine eligibility for an entitlement to plan benefits in accordance with the terms of the plan. "Where, as here, an ERISA-governed employee-benefit plan grants the plan administrator or another fiduciary discretion to interpret the plan and to determine eligibility for benefits," the Court reviews "the fiduciary's decision for abuse of discretion." *Hampton v. Reliance Standard Life Ins. Co.*, 769 F.3d 597, 600 (8th Cir. 2014) (citing *Wakkinen v. UNUM Life Ins. Co. of Am.*, 531 F.3d 575, 580–81 (8th Cir. 2008)). That means the Court must uphold MetLife's "decision so long as it is based on a reasonable interpretation of the Plan and is supported by substantial evidence." *Id.* "Substantial evidence" is that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 601. It means "more than a scintilla but less than a preponderance." *Green v. Union Sec. Ins. Co.*, 646 F.3d 1042, 1050 (8th Cir. 2011). In addition, the Court is limited to the record that was before the claims administrator at the time of the determination. *Hall v. Metro. Life Ins. Co.*, 750 F.3d 995, 998 (8th Cir. 2014).

The administrator's decision should be reversed only if it was "arbitrary and capricious." *Green*, 646 F.3d at 1050.

Defendants contend that MetLife's determination was supported by substantial evidence and that the defendants are thus entitled to summary judgment. MetLife determined that Robinson was the proper payee of the decedent's plan benefits. It is undisputed that, in the absence of a plan beneficiary, the plan provided for payment to the decedent's spouse. Because MetLife recognized that the decedent had died under suspicious circumstances, and that a person should not benefit from his wrongdoing, MetLife sought confirmation that Robinson was not a suspect in his wife's death. Even after MetLife learned that someone else had been charged with decedent's murder, MetLife continued to investigate and await confirmation that Robinson was not a suspect. Finally, after a police captain advised MetLife that Robinson was not being prosecuted and that he had shot the decedent accidentally while trying to shoot at the person breaking into the residence, MetLife made the payment to Robinson. The police captain also told MetLife that the decedent's family believed Robinson had been involved in the decedent's death, but that the police had found no basis for that belief. Here, plaintiffs dispute defendants' statements of fact having to do with the prosecution's conclusions and argue that the case was not properly investigated by the police, but plaintiffs offer no evidence in support of their contention. Plaintiffs' theory is based entirely on speculation which was not accepted by the police or any law enforcement authorities. Plaintiffs have not successfully rebutted defendants' showing that their determination to pay the plan benefits to Robinson was based on substantial evidence. Plaintiffs insist that a jury should be

permitted to decide their case based on their belief that Robinson intended to kill the decedent; however, there is no right to a trial by jury in an ERISA action. *See Hollenbeck v. Falstaff Brewing Corp.*, 605 F. Supp. 421, 430 (E.D. Mo. 1984) *aff'd*, 780 F.2d 20 (8th Cir. 1985). Indeed, as discussed above, the Court is limited to the record that was before the claims administrator, and it is clear that MetLife here relied upon substantial evidence to determine that Robinson was entitled to decedent's plan benefits as her spouse (after it was determined that he was not her murderer). It appears that MetLife never obtained a written statement from the police affirming that Robinson was not a suspect, but they documented numerous other statements from the police and prosecutor that supported MetLife's conclusion. By the time benefits were paid to Robinson --- well over a year after the decedent's homicide --- the prosecutor had charged Robert Madison II and had a jury trial scheduled, and the police captain stated that Robinson would not be charged because he had been trying to shoot an intruder in their home.

MetLife has shown that its decision was based on substantial evidence and that it is thus entitled to summary judgment. Finally, Unilever is also entitled to summary judgment because, as the plan sponsor, it was not responsible either for making benefits determinations or for paying out on the claim. *See Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1088 (8th Cir. 2009).

Dated this   14th   day of April, 2015.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE